1  WO

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9  Dennis Andrew Ball,                    No. CV-2012-01574-PHX-BSB

10              Plaintiff,                 **ORDER**

11  v.

12  Carolyn W. Colvin, Acting Commissioner
    of Social Security,

13              Defendant.

14

15          Plaintiff Dennis Andrew Ball seeks judicial review of the final decision of the

16  Commissioner of Social Security (the Commissioner) finding him ineligible for

17  supplemental security income (SSI) benefits from June 2008 through September 2010.

18  (Doc. 1.)  The parties have consented to proceed before a United States Magistrate Judge

19  pursuant to 28 U.S.C. § 636(b).    As set forth below, the Court affirms the

20  Commissioner's decision.

21  **I.    Procedural Background**

22          Plaintiff became eligible to receive SSI benefits in November 2004.  (Tr. 72, 97-

23  101.)[1]  In August 2010, the Social Security Administration (the Agency) notified Plaintiff

24  _____

25          [1]   Citations to "Tr." are to the corrected administrative record.  (Doc. 33.)  On
    April 15, 2013, with the Court's authorization (Docs. 28, 32), the Commissioner filed the
26  corrected administrative record (Doc. 33) because pages 8-68 of the administrative
    record, filed September 28, 2012 (Doc. 13), included copies of documents that Plaintiff
27  had attached to his Complaint.  Most of these documents, pages 8-67, contained this
    Court's electronic file stamp, demonstrating that those pages had been attached to the
28  Complaint and filed with the Court.  (*Compare* Doc. 1 at 7- 66 with Doc. 13 at 8-67.)
    Page 68 is a copy of the summons in a civil action issued for service on the
    Commissioner.  (Doc. 13, Tr. 68.)  In addition, some of these documents were duplicates

that he had become ineligible for benefits as of June 2008 because his assets exceeded the allowable limit. (Tr. 165-72.) These assets included two properties valued at more than $28,000. (*Id.*) Plaintiff requested reconsideration of the decision. (Tr. 177.) After the Agency affirmed its initial decision, Plaintiff requested a hearing before an administrative law judge (ALJ). (Tr. 185-86, 189.)

The ALJ held a hearing, at which Plaintiff appeared and testified, and found that Plaintiff's assets exceeded the allowable limit of $2,000 by at least $26,172 and concluded that Plaintiff became ineligible for SSI benefits as of June 2008. (Tr. 72-75, 241-59.) Plaintiff sought review of the ALJ's decision. (Tr. 7.) In June 2012, the Social Security Administration Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6); *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council.) Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).[2]

## II.   Evidence before the ALJ

### A.   The Illinois Properties

Plaintiff inherited two Illinois properties from his mother when she died in 2006. (Tr. 246, 248, 251.) In January 2006, the assessor's office, in the county in which the properties are located, valued one property at $14,250 (Tr. 108) and valued the other property at $13,920. (Tr. 109.) Thus, in 2006, the combined assessed value of the

---

of other portions of the administrative record. (*Compare* Doc. 13, Tr. 45-52 to Tr. 69-75; Tr. 21-22 to Tr. 185-86; Tr. 28-29 to Tr. 193-94; Tr. 67 to Tr. 200; Tr. 16-17 to Tr. 201-02; and Tr. 24 to 237.) To retain the pagination of the original filing, the Court permitted the Commissioner "to substitute the erroneously filed pages 8-68 with blank pages." (Doc. 32 at 2.)

[2]   The Scheduling Order set forth a briefing schedule for Plaintiff's opening brief, Defendant's answering brief, and for Plaintiff's optional reply brief. (Doc. 10.) Neither the Scheduling Order nor the applicable Local Rule, LRCiv 16.1, directed or permitted the filing of a motion for summary judgment, and the Court had previously stricken a motion for summary judgment that Plaintiff filed. (Doc. 18.) Nonetheless, Plaintiff filed an "Opening Brief Rule LRCiv 16.1 with Motion for Summary Judgment Rule 56.1." (Doc. 21.) Even if a motion for summary judgment were properly filed in this Social Security proceeding, Plaintiff's filing does not comply with the requirements of LRCiv 56.1. Accordingly, the Court will deny the Plaintiff's motion for summary judgment, but will consider Plaintiff's opening brief.

properties was $28,170.  (Tr. 108-09.)  In November 2007, GRP Financial Services indicated that one of the properties had a monthly mortgage payment of $353.37, plus $52.60 to be placed into escrow for property insurance and taxes, and a total mortgage payoff amount of $37,831.57.  (Tr. 128-29.)  The record before the ALJ did not include any evidence of a mortgage for the other property.  (Tr. 128-29, 204.)  Insurance policy declarations showed that Plaintiff had homeowner's insurance for the two properties.  (Tr. 148-49.)  County real estate tax bills established that for the 2009/2010 tax year, one property had a "fair cash value" of $49,158, and for the 2008/2009 tax year, the other property had a "fair cash value" of $49,500.  (Tr. 130-31.)

## B.     The Dennis Ball Trust

Plaintiff also submitted documents to the Agency showing that he established the Dennis A. Ball Revocable Living Trust (Dennis Ball Trust) in April 2006.  (Tr. 110-27.)  The trust documents identified Plaintiff as the grantor and trustee.  (Tr. 112, 121.)  The trust documents further stated that the trust was for Plaintiff's benefit and would be funded with "life insurance policies and other property described in Schedule A hereto, together with such monies, securities and other assets as the Trustee hereafter may hold or acquire hereunder."  (Tr. 112.)  Schedule A listed the following property: "1999 NuWa Hitchhiker 5th wheel," "2006 Dodge Ram Vehicle," and "personal property ─ computers, clothes, phones, tv's, convertor boxes ─ jewelry, coins."  (Tr. 125.)  The trust documents, at article seven, also stated that the grantor (Plaintiff) reserved the right "to amend or revoke in whole or in part this Agreement or any trust created hereunder."  (Tr. 116.)

## C.     Plaintiff's Testimony

At the 2010 hearing before the ALJ, Plaintiff appeared without counsel and testified.  (Tr. 241-60.)  Plaintiff testified that he lived in Arizona.  (Tr. 243.)  Plaintiff stated that the Dennis Ball Trust owned the two Illinois properties that he had inherited from his mother in 2006.  (Tr. 246, 248, 251.)  Plaintiff also testified that there was a mortgage on one of the properties for "more than the house [wa]s worth."  (Tr. 249.)  Plaintiff estimated that the combined "street" or resale value" of his two properties was

1   "about $20,000."   (Tr. 256.)   He stated that, as of the date of the hearing, tenants

2   occupied both properties, and he received $875 monthly in rental income.  (Tr. 256-57.)

3   In addition to the two Illinois properties, Plaintiff testified that he owned a 2006 Dodge

4   Ram truck, on which he owed $23,000, and a mobile trailer home.  (Tr. 254-56.)

5   **III.     The ALJ's Decision**

6          In November 2010, the ALJ issued a decision finding that Plaintiff became

7   ineligible for SSI benefits as of June 2008.  (Tr. 75.)  Specifically, the ALJ found that in

8   2007 Plaintiff received properties worth over $2,000, that neither of the properties was

9   his primary place of residence, the properties were held in a revocable trust in which

10  Plaintiff was both the grantor and the trustee, and there were no proven encumbrances on

11  the properties that would reduce their value below the $2,000 limit for SSI benefits.

12  (Tr. 73-75.)  The ALJ concluded that Plaintiff had resources worth more than $2,000 and

13  thus was ineligible for SSI benefits.  (Tr. 75.)

14  **IV.     Standard of Review**

15         The district court has the "power to enter, upon the pleadings and transcript of

16  record, a judgment affirming, modifying, or reversing the decision of the Commissioner

17  of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C.

18  § 405(g).   The district court reviews the Commissioner's final decision under the

19  substantial evidence standard.  Under this standard the Court affirms the Commissioner's

20  decision if it is supported by substantial evidence and it is free from legal error.  *Smolen*

21  *v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528

22  F.3d 1194, 1198 (9th Cir. 2008).

23         Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for

24  errors that are harmless."   *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

25  Substantial evidence means more than a mere scintilla, but less than a preponderance; it

26  is "such relevant evidence as a reasonable mind might accept as adequate to support a

27  conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see*

28  *also Webb v Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).   In determining whether

1    substantial evidence supports a decision, the court considers the record as a whole and

2    "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v.*

3    *Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

4           The court, however, may not "affirm the ALJ's . . . decision based on evidence

5    that the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003);

6    *see also SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (emphasizing the fundamental

7    rule of administrative law that a reviewing court "must judge the propriety of

8    [administrative] action solely by the grounds invoked by the agency" and stating that if

9    "those grounds are inadequate or improper, the court is powerless to affirm the

10   administrative action by substituting what it considers to be a more adequate or proper

11   basis.").

12          The ALJ is responsible for resolving conflicts in testimony, determining

13   credibility, and resolving ambiguities.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

14   Cir. 1995).  "When the evidence before the ALJ is subject to more than one rational

15   interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of* Soc.

16   *Sec. Admin*., 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

17   **V.    Discussion**

18          The SSI program provides benefits to individuals who are aged, blind, or disabled

19   and who meet certain income and resource limits.   *See* 42 U.S.C. § 1381-83f; 20

20   C.F.R. § 416.11-416.2227.   While receiving SSI, Plaintiff inherited two parcels of real

21   property that are located in Illinois.  Plaintiff asserts that the value of the properties is less

22   than the $2,000 resource limit because of encumbrances such as a mortgage, judgment

23   lien, and back taxes.   (Doc. 21 at 1, 5.)   Defendant argues that, at the time of the

24   administrative proceedings, property tax records indicated that the properties had a cash

25   value in excess of $98,000, and that the only demonstrated encumbrance was a mortgage

26   of $37,000.  (Doc. 24.)  Defendant further argues that Plaintiff had the burden of proving

27   his eligibility for SSI, but did not submit any other evidence relevant to the value of his

28   properties to the ALJ.  Defendant contends that substantial evidence supports the ALJ's

finding that Plaintiff's resources exceeded $2,000 and, therefore, the Court should affirm the Commissioner's final decision.  For the reasons set forth below, the Court affirms the Commissioner's decision.

**A.    Supplemental Security Income Disability Insurance**

Because SSI is a needs-based benefit, it is only available for "aged, blind, or disabled" individuals who meet strict income and resource limits.  *See* 42 U.S.C. § 1381a.  To be eligible for SSI, an individual who does not have an eligible spouse is limited to $2,000 in resources.  *See* 42 U.S.C. § 1382(a)(3)(B); 20 C.F.R. § 416.1205(c).  Resources include "cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for his or her support and maintenance."  20 C.F.R. § 416.1201(a).  Real property is considered a resource "[i]f the individual has the right, authority, or power to liquidate the property."  20 C.F.R. § 416.1201(a)(1).  In addition, property held in a revocable trust is usually considered a resource.[3]  *See* 42 U.S.C. § 1382b(e)(3)(A)-(B) (explaining that when an individual's assets are transferred to a trust other than by will, the corpus of a revocable trust "shall be considered a resource available to the individual"); *see also* Program Operations Manual System (POMS) SI 01120.201, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0501120201 (last visited Oct. 30, 2013).[4]

As the ALJ noted (Tr. 72-73), the relevant statute and the social security regulations also provide for the exclusion of certain items in determining the resources of an individual, including the "home," "[h]ousehold goods, personal effects; and an

---

[3]    Certain types of trusts are excepted from these rules and are not counted as resources  *See* 42 U.S.C. § 1382b(e)(5), referencing 42 U.S.C. § 1396p(d)(4).  In addition to other criteria, the exceptions all require that the trust provide for reimbursement to states that paid medical assistance on behalf of the trust beneficiary.  42 U.S.C. § 1396p(d)(4).

[4]    The POMS is a set of procedures the Agency uses to process social security claims.  The Supreme Court has noted, "[w]hile these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect . . . ." *Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler, et al.*, 537 U.S. 371, 385 (2003) (discussing the POMS) (citations omitted); *see also Warre on behalf of E.T. IV v. Barnhart*, 439 F.3d 1001, 1005 (9th Cir. 2006) (noting that "[t]he POMS does not have the force of law, but it is persuasive authority").

1    automobile," and property used in a trade or business "which is [] essential to the means

2    of self-support . . . ." 42 U.S.C. § 1382b(a)(1)-(3); 20 C.F.R. § 1210(a)-(d).

3        **B.    Substantial Evidence Supports the ALJ's Decision**

4        As discussed below, the ALJ's determination that Plaintiff came into ownership of

5    property valued over $2,000 while he was receiving SSI benefits is free from legal error

6    and is supported by substantial evidence.

7            **1.    The Value of the Illinois Properties**

8        Plaintiff started receiving SSI benefits in November 2004. (Tr. 97-101.)  Plaintiff

9    testified that he inherited two Illinois properties from his mother in 2006. (Tr. 246, 248,

10   251.)[5]  To determine the value of a non-liquid resource such as real property, the Agency

11   considers the market value of the property. *See* 20 C.F.R. § 416.1201(c)(2)(i)-(ii) (stating

12   that the equity value of a resource is the price the property "can reasonably be expected to

13   sell for on the open market in the particular geographic area; minus [] any

14   encumbrances").

15       In January 2006, the assessor's office, in the county in which the properties are

16   located, concluded that the Illinois properties had a combined "assessed value" of

17   $28,170. (Tr. 73, 108-09.)  The assessor's office later determined that the two properties

18   had a combined "assessed value" of $32,270, and at the same time had a "fair cash value"

19   of $98,658. (Tr. 73, 130-31)  The Illinois Property Tax Code uses the term "fair cash

20   value" to describe real property's market value.  Fair cash value is "[t]he most probable

21   sale price (in terms of money) in a competitive, open market," and the assessed value is

22   the "[v]alue placed upon property after multiplying its market value by the level of

23   assessment."  http://tax.illinois.gov/Publications/Pubs/PUB-136.pdf (last visited Oct. 30,

24   2013).  Thus, the fair cash value approximates the market value used for the Agency's

25   resource determination.

26   _____

27       [5]  The ALJ found that Plaintiff received ownership of the two properties by a quit-
     claim deed on December 3, 2007. (Tr. 73).  Although the quit-claim deed is not in the
28   record, Plaintiff does not dispute that he owns the properties (Tr. 246), and tax bills
     identify him as the owner.  (Tr. 130-31.)

1    The ALJ noted that, other than the documents from the assessor's office, the
2    record did not include any appraisals, and there was no indication that Plaintiff had sold
3    or tried to sell the properties.  (Tr. 73-74.)  Plaintiff does not dispute the ALJ's finding
4    regarding the estimated value of his Illinois properties.  (Doc. 21 at 5 (stating that the
5    estimated value of the property was $28,170 in 2006 and $98,658 in 2009/2010).)

6                      **2.      Encumbrances on the Properties**

7    The ALJ also determined that there were no encumbrances on the Illinois
8    properties that lowered their combined value below the $2,000 limit for SSI benefits, and
9    this determination is also supported by substantial evidence and is free from legal error.
10   (Tr. 74); *see* 20 C.F.R. § 416.1201(c)(2)(i)-(ii) (property is evaluated according to the
11   "price that the property can reasonably be expected to sell for on the open market," minus
12   any encumbrances).   The ALJ noted Plaintiff's testimony that the two properties'
13   combined value was less than $20,000 because they were in bad repair and the mortgage
14   against one of the properties exceeded the combined value of the properties.  (Tr. 74,
15   256.)  However, the only record evidence of an encumbrance was a 2007 letter showing a
16   mortgage pay off amount of $37,831.57 for one of the properties.  There was no evidence
17   of a mortgage for the other property.  (Tr. 74, 128-29, 204.)   Considering the assessed
18   market value of over $98,000, as the ALJ found, the mortgage of $37,831.57 did not
19   reduce the value of Plaintiff's Illinois properties below $2,000.

20                  **3.      Plaintiff's Burden to Establish Encumbrances**

21   An individual seeking SSI benefits bears the burden of proving that he is qualified
22   to receive such benefits, including providing relevant documents and evidence that the
23   agency cannot otherwise access.  *See* 20 C.F.R. § 416.200 (stating that "[y]ou must give
24   us any information we request and show us necessary documents or other evidence to
25   prove that you meet the[]requirements."); *see also Higbee v. Sullivan*, 975 F.2d 558, 561
26   (9th Cir. 1992) (stating that SSI "[r]ecipients are responsible for providing documentation
27   and other evidence to establish" that they are qualified to receive benefits); *Hudson v.*
28   *Bowen*, 849 F.2d 433,434 (9th Cir. 1988) (holding that, in evaluating a claimant's

1   resources, an ALJ "is free to disregard a claimant's self-serving statements if they are

2   unsupported by objective findings."); *Embler v. Astrue*, 2010 WL 3937937, at *4

3   (E.D. Wash. Oct. 6, 2010) (concluding that ALJ did not err in finding the plaintiff

4   ineligible for SSI benefits when the plaintiff failed to comply with the commissioner's

5   process of verifying SSI income/resource eligibility).

6       Here, substantial evidence supports the ALJ's finding that, despite the Agency's

7   numerous attempts to obtain evidence from Plaintiff regarding the "encumbrances,

8   expenses, and values associated with his properties," Plaintiff did not provide any

9   "appraisals, [] documentation detailing expenses, or bank statements that would be useful

10  in determining the value of [his] assets or the income he derive[d] from these assets."[6]

11  (Tr. 74-75.)   Therefore, substantial evidence supports the ALJ's determination that

12  Plaintiff did not satisfy his burden of showing there were encumbrances on the Illinois

13  properties that reduced their combined value below the $2,000 limit for receiving SSI

14  benefits.  (Tr. 74.)

15      Although Plaintiff testified that the combined "street" or resale value of his

16  properties was no more than $20,000, he did not provide any objective evidence in

17  support of that assertion.  (Tr. 74, 256.)  The record reflects that despite being directed to

18  provide relevant documents regarding his resources, and after numerous opportunities to

19  do so, Plaintiff failed to submit evidence to the Agency of any current liens on his

20  properties, mortgage statements, or appraisals showing a lesser value than the value in the

22          [6] An Agency "report of contact" from July 2009 noted that because Plaintiff had
23  failed to provide an original or certified copy of his trust the Agency could not verify the
    value of the assets or resource.  (Tr. 145.)  A "report of contact" from April 2010 stated
24  that Plaintiff had provided unsigned trust paperwork.  (Tr. 152.)  An August 2010 "report
    of contact" stated that Plaintiff's attorney had been contacted, but he "had no idea what
25  [was] in the trust."  (Tr. 163.)  A September 2010 "report of contact" noted that Plaintiff
    was "told he needs to provide all trust documents including expenditure and receipt
26  statements as well as any other documents related to the trust," but he had not yet
    provided the paperwork.  (Tr. 182.)  Later in September 2010, a "report of contact:"
27  noted that, although Plaintiff had provided a copy of his trust, "he did not provide
    monthly statements for the trust as requested or anything that showed the money involved
28  in the trust."  (Tr. 204.)  Thus, the record reflects that the Agency made numerous
    attempts to obtain all relevant information from Plaintiff regarding the value of his
    resources, and that he failed to provide the requested documentation.

1   tax records before the ALJ.   Plaintiff does not explain his failure to produce the

2   documents the Agency requested.   (Doc. 21 at 1-5; Doc. 31.)   Accordingly, the ALJ's

3   determination that Plaintiff did not satisfy his burden of proving that there were

4   encumbrances on the Illinois properties that lowered the value below $2,000 is supported

5   by substantial evidence and is free from legal error.   *See* 20 C.F.R. § 416.200; *Higbee*,

6   975 F.2d at 561; *Hudson*, 849 F.2d at 434.

7                                   **4.      Back Taxes**

8            Plaintiff further argues that the ALJ erred in failing to consider "Back Taxes"

9   against one of the properties in the amount of $1,410.69.   (Doc. 21 at 4.)   The 2008/2009

10   real estate tax bill for one property showed that $1,410.69 in back taxes were owed as of

11   September 18, 2009.   (Tr. 131.)   However, Plaintiff has not shown that any taxes were

12   owed at the time of the ALJ's decision in November 2010.   Even assuming that any taxes

13   owed created an encumbrance against the Illinois properties, the amount owed would not

14   have reduced the value of those properties below the statutory limit of $2,000.

15   Accordingly, the ALJ's alleged failure to consider $1,410.69 in back taxes was harmless.

16                            **5.      Principal Place of Residence**

17           Substantial evidence also supports the ALJ's determination that neither of the

18   Illinois properties was Plaintiff's principal place of residence between June 2008 and

19   November 2010.   (Tr. 73.)   The regulations exclude a claimant's "home" in determining

20   his resources.   20 C.F.R. § 416.1210(a).   A "home" is defined as "any property in which

21   an individual . . . has an ownership interest and which serves as the individual's principal

22   place of residence."   20 C.F.R. § 416.1212(a).   However, if a claimant moves out of his

23   house "without the intent to return, the home becomes a countable resource because it is

24   no longer the individual's principal place of residence."   20 C.F.R. § 416.1212(c).

25           Here, although Plaintiff testified that he considered one of the Illinois properties

26   his "residence" (Tr. 248), he also testified that he was living in Surprise, Arizona, and

27   that he had lived in Arizona since at least 2004.   (Tr. 243, 253; *see also* Tr. 217 (stating

28   that Plaintiff had lived in Arizona since 1998).)   He also testified that both properties

1    were occupied by renters at the time of the hearing before the ALJ.   (Tr. 256-57.)

2    Plaintiff did not express an "intent to return" to either of the Illinois properties during the

3    administrative hearing.  (Tr. 241-260.)  Therefore, the ALJ's determination that neither of

4    the Illinois properties was Plaintiff's principal place of residence is supported by

5    substantial evidence and is free from legal error.  *See* 20 C.F.R. §§ 416.1210(a),

6    416.1212(a),(c).

7                        **6.    Revocable Trust**

8            Finally, the ALJ did not err in finding that because the Illinois properties were

9    held in a revocable trust in which Plaintiff was both the grantor and trustee, the properties

10   were considered assets for the purposes of resource calculation.  (Tr. 74.)  As the ALJ

11   noted, it is unclear whether the Illinois properties were held by the Dennis Ball Trust or

12   were owned outright by Plaintiff.  (*Id.*)  The record does not include any documents

13   specifically showing that the Illinois properties were held by the Dennis Ball Trust and

14   the tax documents identify Plaintiff, not the Dennis Ball Trust, as the owner of the

15   properties.   (Tr. 107-08, 110-27, 128-31.)   The ALJ, however, credited Plaintiff's

16   testimony that both properties were held by the Dennis Ball Trust.  (Tr. 74, 246.)

17   Because the Dennis Ball Trust was revocable, the ALJ properly considered the trust

18   assets as a resource.  When an individual places his own assets in a revocable trust, those

19   assets are considered a resource for SSI purposes.  *See* 42 U.S.C. § 1382b(e)(3)(A)-(B).

20           As the ALJ found, the record reflects that the "Dennis A. Ball Revocable Living

21   Trust" is a revocable trust.  Plaintiff is the grantor of the trust and article seven of the

22   trust provides that the grantor retains the right to revoke the trust at any time without the

23   consent of any person.  (Tr. 74, Tr. 112, 116.)  An individual cannot prevent his assets

24   from being considered a resource by placing his property into a trust.  *See* 42 U.S.C.

25   § 1382b(e)(3)(A) (providing that "[i]n the case of a revocable trust established by an

26   individual, the corpus of the trust shall be considered a resource available to the

27

28

1    individual.").[7]  Thus, the ALJ did not err in determining that the Illinois properties were

2    considered resources for determining SSI eligibility, even assuming the Dennis Ball Trust

3    held the properties.  (Tr. 74.)

4         **C.     The Properties Were Not Used in a Trade or Business**

5              Plaintiff argues that the ALJ erred in failing to consider that his Illinois properties

6    should be excluded as resources because they "may be considered a business or trade."

7    (Doc. 21 at 4, Doc. 31 at 5 (citing 42 U.S.C. § 1382b(3).)  The regulations exclude a

8    resource that is "[p]roperty of a trade or business which is essential to the means of self-

9    support."  20 C.F.R. § 1210(d); *see also* 42 U.S.C. § 1382b(3).  In this case, however,

10   Plaintiff has not established that the Illinois properties are "used in a trade or business"

11   because he has not provided any supporting documents, such as business tax returns.  *See*

12   20 C.F.R. § 416.1220; POMS SI 01130.501C(3)(a) (a claimant's allegations as to "the net

13   earnings from self-employment and validity of trade or business" should be verified

14   through the most recent business tax return).

15             Moreover, the exclusion for property used in a trade or business (which applies to

16   rental properties) is capped at $6,000.  *See* 20 C.F.R. § 416.1222(a) (stating that when a

17   person's equity in the property exceeds $6,000, the value in excess of $6,000 is counted

18   toward the available resource limit).  Thus, even if Plaintiff's Illinois properties fit within

19   this exception, only $6,000 of his equity would be excluded and the remaining value

20   would be counted as a resource for purposes of determining his SSI eligibility.  *See id*.

21   Because the cash value of Plaintiff's property exceeded $98,000 at the time of the

22   administrative proceedings, and the only established encumbrance was a $37,000

23   mortgage, excluding $6,000 of Plaintiff's equity would not have reduced the value of his

24   resources below the $2,000 limit.  Therefore, even if the ALJ erred in failing to conclude

25   that the Illinois properties qualified for the exclusion for property used in a business, any

26   error was harmless.

27   _____

28        [7]  Plaintiff's trust did not meet any of the exceptions to this rule.  It did not include
     any provisions to reimburse any state that had paid medical assistance on his behalf.  *See*
     42 U.S.C. §§ 1382b(e)(5); 1396p(d)(4) (listing exceptions); (Tr. 110-127.)

- 12 -

1

## D.   Plaintiff was Afforded Due Process

2      Plaintiff also argues that the Agency failed to afford him the procedural due

3  process to which he was entitled.  (Doc. 21 at 3; Doc. 31 at 3.)  "The fundamental

4  requirement of due process is the opportunity to be heard 'at a meaningful time and in a

5  meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting

6  *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  The Constitution's "procedural [due

7  process] protections" apply in Social Security cases.  *Id*.at 333-35.  Under the Social

8  Security regulations, a claimant has a right to appear and present evidence, including

9  testimony, at a hearing before an ALJ.  *See* 20 C.F.R.§§ 404.944, 404.950(a).

10     Here, Plaintiff asserts that "[trust] matters are always supposed to be evaluated at

11  the Regional level" and, therefore, his case should have been referred to the regional

12  office in San Francisco, California.  (Doc. 21 at 3.)  Plaintiff's argument is based on

13  POMS SI01120.202A(1)(d), which explains that a trust or other resource issue should be

14  referred to a regional office when there are "unresolved issues" that prevent the local

15  office from determining the resource status of a trust.  However, that provision does not

16  require the Agency to send every trust to a regional office for evaluation.  Thus, the local

17  Agency office followed the proper procedures in evaluating Plaintiff's trust.  *See* POMS

18  SI01120.202A(1)(d).  Moreover, the Agency's alleged failure to follow a POMS

19  procedure does not give rise to a due process violation.  *See Lowry v. Barnhart*, 329 F.3d

20  1019, 1023 (9th Cir. 2003) (concluding that to the extent the POMS contain procedural

21  guidance, it does not impose "judicially enforceable duties").

22     Plaintiff had numerous opportunities to submit evidence in support of his claims

23  and he appeared and testified at a hearing before the ALJ.  Plaintiff was afforded the

24  process to which he was due under the regulations and *Mathews*.  Plaintiff has not shown

25  that the Commissioner committed legal error in failing to afford him the process to which

26  he was due.  Accordingly, his due process claim does not provide a basis for reversing the

27  ALJ's determination.

28

1    **E.    Plaintiff's Additional Evidence is Not Material**

2        Plaintiff also challenges the ALJ's decision based on evidence that Plaintiff

3    attached to his Complaint.[8]  (Doc. 21 at 4.)  Additionally, after the briefing closed in this

4    matter, Plaintiff filed a "Motion to Amend the Administrative Record."  (Doc. 35.)  In

5    this motion, Plaintiff essentially seeks a remand pursuant to sentence six of

6    42 U.S.C. § 405(g) to consider a March 7, 2013 judgment of foreclosure.  Thus, the Court

7    construes the motion to amend as a supplement to Plaintiff's opening brief and will direct

8    the Clerk of Court to terminate the motion to amend.

9        As Defendant argues in the answering brief and in response to Plaintiff's motion

10   to amend (construed as a supplement to the opening brief), the evidence attached to

11   Plaintiff's Complaint and submitted with the supplement to his opening brief is not

12   material to the ALJ's determination that Plaintiff had resources in excess of $2,000.

13   Judicial review of the Commissioner's final decision is based on the "transcript of the

14   record," which the Agency prepares and certifies.  This record includes "the evidence

15   upon which the findings and decision complained of are based."  42 U.S.C. § 405(g).

16       The district court may only consider additional evidence that was not part of the

17   administrative record pursuant to sentence six of 42 U.S.C. § 405(g).  Sentence six

18   authorizes the courts to remand cases for consideration of additional evidence when the

19   evidence is "new" and "material" and when there is "good cause for the failure to

20   incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  To

21   be material, "the new evidence must bear directly and substantially on the matter in

22   dispute," and there must be a "reasonable possibility that the new evidence would have

23   _____

24       [8]  Defendant asserts that this evidence was not submitted to the Appeals Council.
     Even assuming that Plaintiff had presented this evidence to the Appeals Council, it would
25   not provide a basis for reversing the ALJ's decision.  The Ninth Circuit has held "that
     when a claimant submits evidence for the first time to the Appeals Council, which
26   considers that evidence in denying review of the ALJ's decision, the new evidence is part
     of the administrative record, which the district court must consider in determining
27   whether the Commissioner's decision is supported by substantial evidence."  *Brewes v.
     Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2010).  Upon review of
28   the record, as set forth in this Order, this evidence does not undermine the substantial
     evidence supporting the ALJ's determination that Plaintiff had resources in excess of
     $2,000.

- 14 -

1    changed the outcome of the administrative hearing."  *See Mayes v. Massanari*, 276 F.3d

2    453, 462 (9th Cir. 2001) (citations omitted).  After a sentence six remand, the Agency

3    assesses the new evidence, makes findings of fact, and issues a decision that is subject to

4    review by the district court.  *See* 405 U.S.C. § 405(g).  When remanding pursuant to

5    sentence six, the court does not consider the merits of the Agency's decision.  *See*

6    *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

7                    **1.    Evidence Attached to the Complaint**

8            The alleged "new" evidence attached to the Complaint falls into three categories.

9    First, a large part of that evidence consists of documents that were part of the

10    administrative record before the ALJ, and thus those documents are not "new" evidence.

11    These documents include the following:

12            1.    A September 27, 2010 letter from Plaintiff to the Agency titled "Notice of

13    Eviction Notice of Dire Need" (Doc. 1 at 15-17, *see also* Tr.  201-02);

14            2.    An Agency publication titled "Supplemental Security Income" and a Notice

15    denying Plaintiff's request for reconsideration of the ALJ's determination  (Doc. 1 at 19-

16    22, *see also* Tr. 185-86);

17            3.    An October 15, 2010 letter from Plaintiff to the Agency titled "Notice of

18    Conditional Payment of SSI" (Doc. 1 at 23, *see also* Tr. 237);

19            4.    A September 22, 2010 letter from Plaintiff to the Agency titled "Notice"

20    (Doc. 1 at 27-28; *see also* Tr. 193-94);

21            5.    A Notice of Unfavorable Decision containing the ALJ's November 9, 2010

22    decision (Doc. 1 at 44-54, *see also* Tr. 69-75); and

23            6.    A newspaper article titled "Maricopa County Probate Court — Sister,

24    fiduciary had same attorney."  (Doc. 1 at 66, *see also* Tr. 200.)

25            The second category of materials that Plaintiff submitted with his Complaint

26    includes documents that were not part of the administrative record and which consists of

27    the following correspondence between Plaintiff and the Agency:

28

1.      An October 25, 2010 letter from Plaintiff titled "Notice of Mandatory Payment Continuation" in which Plaintiff objects to the ALJ's determination, asserts that the Agency should have forward the trust documents to the regional office in San Francisco, and states that he is sending his file to Congressman Trent Franks (Doc. 1 at 13);

2.      An Agency publication titled "Compilation of the Social Security Laws" (Doc. 1 at 31-36);

3.      A July 14, 2010 letter from Plaintiff stating that he has not yet appealed the Agency's initial determination (Doc. 1 at 38-39);

4.      A June 2, 2009 letter from the Agency notifying Plaintiff of a telephone appointment (Doc. 1 at 41-42); and

5.      A letter from the Agency to Representative Trent Franks. (Doc. 1 at 55.)

This correspondence and the Agency publication are not relevant to the Court's assessment of the ALJ's determination that Plaintiff was ineligible for SSI benefits. Additionally, the issues addressed in Plaintiff's correspondence are mainly duplicative of information that was already in the administrative record before the ALJ.   (Tr. 250) Furthermore, the Agency presumably was aware of its own publication regarding Social Security laws.   Thus, the correspondence and the Agency publication attached to Plaintiff's Complaint do not constitute "new" evidence for purposes of section 405(g). Additionally, there is no reasonable possibility that the correspondence or the Agency publication would have changed the ALJ's determination.   Therefore, the evidence is not material.   *See Mayes*, 276 F.3d at 462.

The last group of documents Plaintiff submitted with his Complaint includes two documents that could be considered relevant in determining the value of his Illinois properties.   These documents include: (1) a January 22, 2004 judgment from the Circuit Court of the First Judicial Circuit in Massac County, Illinois (Doc. 1 at 62-65); and (2) two letters from Allstate Indemnity Company (Allstate).   (Doc. 1 at 57-60.)

1    Plaintiff asserts that the January 2004 judgment resulted in a lien against his
2  Illinois properties rendering them "worthless." (Doc. 21 at 4; Doc. 31 at 5.)  However,
3  on its face, the judgment is not related to Plaintiff's Illinois properties. (Doc. 1 at 62.)
4  The document reflects that Community National Bank filed a complaint against
5  Plaintiff's mother, Eleanor R. Ball, on November 5, 2003. (*Id.*).  After Ms. Ball failed to
6  file a proper answer, the Illinois court granted Community National Bank's motion for
7  judgment on the pleadings.  (*Id.*)  The court found that Ms. Ball owed Community
8  National Bank $58,703.71 based upon a September 30, 2002 promissory note. (Doc. 1 at
9  63.)  The court also found that Community National Bank was "entitled to have and
10  retain [Ms. Ball's] beneficial interest in a certain land trust, being a 25% interest in
11  Greathouse Land Trust 'I', said trust bearing an effective date of December 6, 1996"
12  (Doc. 1 at 64.)  The court entered judgment for Community National Bank as set forth
13  above. (Doc. 1 at 64-65.)

14    The judgment could be considered a lien against property belonging to Plaintiff's
15  mother — specifically her interest in the Greathouse Land Trust.  Plaintiff, however, does
16  not explain how the judgment established an encumbrance or lien against his properties
17  in Illinois.[9]  Therefore, there is no reasonable possibility that this evidence would have
18  changed ALJ's determination and it is not material. *See Mayes*, 276 F.3d at 462.

19    Plaintiff also submitted two letters from Allstate concerning the Illinois properties.
20  (Doc. 1 at 57-60.)  The first letter, dated October 29, 2010, sets forth various problems
21  with one of the Illinois properties that could affect Plaintiff's ability to retain his
22  homeowner's insurance, including: worn or missing shingles on the roof; a tree touching
23  the roof; debris in the yard or on the porch; and doors or portions of the building's
24  exterior in need of paint. (Doc. 1 at 57-58.)  In the second letter, dated September 29,
25  2010, Allstate stated that it was "unable to obtain a complete exterior inspection" of

27  [9] The record includes evidence that Plaintiff was a beneficiary of the Eleanor Ball
Trust (Tr. 76-92), and Plaintiff testified that he received income from that trust.
28  (Tr. 255.)  To the extent that Plaintiff suggests that the January 2004 judgment demonstrates an encumbrance against the Eleanor Ball Trust, he has still not shown a connection between the Eleanor Ball Trust and his two properties in Illinois.

1    Plaintiff's other property.  (Doc. 1 at 60.)  Although these letters show that Plaintiff's

2    properties required repair at the end of 2010, they do not establish that the properties

3    were "worthless."  (Doc. 21 at 4.)  Additionally, Allstate noted the deficiencies in the

4    Illinois properties during the same month, September 2010, that a real estate tax bill

5    noted that one of the properties had an assessed value of $16,129, and a fair cash value of

6    $49,158.  (Tr. 130-31.)  This property likely needed repairs at the time of the 2010 real

7    estate tax assessment, and it was still assessed a value in excess of the allowable resource

8    limit.  Thus, there is no reasonable possibility that the letters from Allstate would have

9    changed ALJ's determination and they are not material.  *See Mayes*, 276 F.3d at 462.

10                    **2.      Evidence Attached to Supplement to Opening Brief**

11          Finally, Plaintiff has submitted a 2013 judgment of foreclosure from the Circuit

12   Court of the First Judicial Circuit in Williamson County, Illinois.[10]  (Doc. 35 at 4.)  The

13   judgment of foreclosure demonstrates that in 2011 a foreclosure action was commenced

14   against one of Plaintiff's Illinois properties.  (*Id*.)  The owners of the property were

15   identified as the "Heirs of Eleanor Ball" and Plaintiff was added as a defendant "whose

16   interest in or lien on the mortgaged real estate is sought to be terminated."  (*Id*. at 7.)

17   Because of the past due mortgage (valued at $37,831.57 in 2007), judgment was entered

18   against the defendants in the amount of $71,494.63 on March 7, 2013.  (*Id*. at 6-7.)  This

19   amount included the original principal balance and other amounts such as interest, taxes,

20   and attorney's fees.  (*Id*.)

21          The judgment of foreclosure was issued in 2013, over two years after the ALJ's

22   November 2010 decision at issue.  The judgment reflects that there was mortgage on one

23   of the Illinois properties for over $37,000, and the mortgage was in default as of May

24   2011.  The existence and amount of this mortgage was part of the record before the ALJ

---

26   [10]   Plaintiff attached this 2013 judgment of foreclosure to his motion to amend.
     (Doc. 35.)  In his reply in support of that motion, Plaintiff also moved to Strike Response
27   to *Ex Parte* Motion.  (Doc 39.)  In that reply/motion Plaintiff again argues that his Illinois
     properties should be not counted as resources based on the 2013 judgment of foreclosure
28   in the amount of $71,494.63.  Although Plaintiff's motion is titled a "motion to strike,"
     he does provide any arguments in support of a motion to strike.  Rather, he reiterates his
     arguments regarding the 2013 judgment of foreclosure.

in 2010.   (Tr. 74, 128-29.)   Neither the foreclosure proceeding nor the judgment of foreclosure are relevant to the issues that were before the ALJ — the value of the Illinois properties between June 2008 and November 2010.[11]  Thus, the judgment of foreclosure is not material within the meaning of sentence six.  *See Bruton v. Massanari*,  268 F.3d 824, 827 (9th Cir. 2001) (finding that information was not material when it involved a different time period than the time period relevant to the ALJ's determination).  Because the 2013 judgment of foreclosures is not material, Plaintiff has not met the requirements for a remand under sentence six of section 405(g).

**VI.   Conclusion**

For the foregoing reasons, the Court concludes that the Commissioner's final decision is supported by substantial evidence and is free from legal error.   Thus, the Court affirms that decision.   The Court also finds that Plaintiff has not met the requirements for a remand to consider new and material evidence under sentence six of 42 U.S.C. § 405(g).

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.  The Clerk of Court is directed to terminate this action.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 21) is **DENIED** because such a motion is not properly filed in this proceeding and, even if it were, Plaintiff's motion does not comply with LRCiv 56.1.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend the Administrative Record (Doc. 35) is construed as a supplement to his opening brief.  The Clerk of Court is directed to terminate the motion to amend.

/ / /

/ / /

/ / /

---

[11]  Plaintiff has clarified that in this matter he is challenging the determination that he was ineligible for SSI payments for the months of October and November 2010. (Doc. 1 at 2; Doc. 21 at 2.)

1   **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (Doc. 39) is

2   **DENIED**.

3   Dated this 30th day of October, 2013.

4

5

6   _____

7   Bridget S. Bade
United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28